1    ANASTASIA P. BODEN, No. 281911
     Email: ABoden@pacificlegal.org
2    JOSHUA P. THOMPSON, No. 250955
     Email: JThompson@pacificlegal.org
3    DANIEL M. ORTNER, No. 329866
     Email: DOrtner@pacificlegal.org
4    
     Pacific Legal Foundation
5    555 Capitol Mall, Suite 1290
     Sacramento, California 95814
6    Telephone: (916) 419-7111
7    Facsimile: (916) 419-7747

8    *Attorneys for Plaintiff*

9

10                   UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF CALIFORNIA

11   NATIONAL CENTER FOR PUBLIC              No.
     POLICY RESEARCH,
12                                           **COMPLAINT FOR
                                             DECLARATORY AND
13                        Plaintiff,         INJUNCTIVE RELIEF**

14        v.

15   SHIRLEY N. WEBER, in her official
     capacity as Secretary of State of the State of
16   California,

17                        Defendant.

18

19                          **INTRODUCTION**

20        1.    Since 2020, all publicly held corporations headquartered in California

21   have been required to meet a quota of female board members or face fines. Starting in

22   2022, these companies will also be required to meet an additional quota of "diverse"

23   board members based on race and sexual orientation. These diversity quotas apply to

24   all businesses across every industry in perpetuity, regardless of whether there is any

25   specific evidence of discrimination. These laws, which dole out benefits and impose

26   burdens on the basis of race, sex, and sexual orientation, are unconstitutional.

27   / /
     / /
28   *Complaint for Declaratory
     and Injunctive Relief*

1

**JURISDICTION AND VENUE**

2

3

4

5

6

2.     This action arises under the Fourteenth Amendment to the United States Constitution pursuant to 42 U.S.C. § 1983. The Court has jurisdiction over this federal claim under 28 U.S.C. § 1331 (federal question) and 1343(a) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201.

7

8

9

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1)(2) because Plaintiff owns shares in several publicly held corporations that will be subject to the diversity quotas and whose executive offices are in this District.

10

**PARTIES**

11

12

13

14

4.     National Center for Public Policy Research (National Center) is a non-profit 501(c)(3) organization that supports free market solutions to social problems and opposes corporate and shareholder social activism that detracts from the goal of maximizing shareholder returns.

15

16

17

18

19

20

5.     To that end, it owns shares in many companies that are traded on the NASDAQ, NYSE, and other large exchanges, including at least fourteen companies that are subject to California's diversity quotas, including Alphabet, Apple, Cisco, Facebook, Intel, Intuit, Levi Strauss, Netflix, PayPal, Pinterest, Salesforce, Tesla, Twitter, and Wells Fargo. National Center will continue to invest in additional companies as resources and opportunities permit.

21

22

23

24

25

26

27

6.     The Center frequently engages at shareholder elections, putting forward shareholder proposals which are intended to return focus to the company's bottom line rather than political pursuits. National Center submits around 25 proposals a year to the SEC. In 2021, National Center's proposals were on the proxy ballot at Alphabet, Cigna, Twitter, and Walmart, and in 2020 they were on the ballot at Amazon, Starbucks, Twitter, Netflix, Chevron, Boeing, Eli Lilly, Walgreens, John Deere & Costco.

28

*Complaint for Declaratory*
*and Injunctive Relief*

7.     National Center supports diversity of thought and experience on corporate boards and believes that quotas based on immutable characteristics are offensive and contrary to this goal, as well as to the Constitution. It believes that shareholders should vote for board members based on their individual talents, capacities, and other characteristics, and that it should be able to vote free of government compelled discrimination.

8.     Defendant Shirley N. Weber is the Secretary of State of the State of California. She is a constitutional officer of the State. *See* Cal. Const. art. V, § 11. In her official capacity as Secretary of State, she is charged with administering and enforcing AB 979. She is being sued in her official capacity pursuant to *Ex parte Young*, 209 U.S. 123, 189 (1908).

## FACTUAL ALLEGATIONS

**Senate Bill 826 (Woman Quota)**

9.     Governor Brown signed SB 826 into law on September 30, 2018. It adds Section 301.3 and Section 2115.5 to the California Corporations Code.

10.     When Governor Brown signed SB 826 into law, he acknowledged that "[t]here have been numerous objections to this bill and serious legal concerns have been raised." He further recognized that these "potential flaws . . . may prove fatal to its ultimate implementation." Despite all of these concerns, he signed the law out of his desire to respond to "recent events in Washington D.C. and beyond."

11.     Before SB 826 was enacted, the California State Assembly Judiciary Committee recognized that "SB 826 would likely be challenged on equal protection grounds and the means that the bill uses, which is essentially a quota, could be difficult to defend." The Assembly floor analysis included the same language.

12.     Under SB 826, any "publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California" must have had "a minimum of one female director on its board" by

*Complaint for Declaratory and Injunctive Relief*

3

December 31, 2019. By December 31, 2021, a corporation must have a number of female directors corresponding to its size:

    a.    A corporation with four or fewer directors must have a minimum of one female director.

    b.    A corporation with five directors must have a minimum of two female directors.

    c.    A corporation with six or more directors must have a minimum of three female directors.

13.    A publicly held corporation is defined as a "corporation with outstanding shares listed on a major United States stock exchange."

**Assembly Bill 979 (Race and Sexual Orientation Quota)**

14.    Governor Gavin Newsom signed AB 979 into law on September 30, 2020. The law amends Section 301.3 and adds Sections 301.4 and Section 2115.6 to the Corporations Code.

15.    Under AB 979, any "publicly held domestic or foreign corporation whose principal executive offices, according to the corporation's SEC 10-K form, are located in California" must have "a minimum of one director from an underrepresented community on its board" by December 31, 2021. By December 31, 2022, a corporation must have a number of directors with given characteristics, depending on the board's size:

    a.    A corporation with four or fewer directors must have a minimum of one director from an underrepresented community.

    b.    A corporation with more than four and fewer than nine directors must have a minimum of two directors from an underrepresented community.

    c.    A corporation with nine or more directors must have a minimum of three directors from an underrepresented community.

*Complaint for Declaratory and Injunctive Relief*

4

16.     These requirements are separate and supplemental to those imposed by the Woman Quota.

17.     A publicly held corporation is defined as a "corporation with outstanding shares listed on a major United States stock exchange."

18.     A "director from an underrepresented community" is defined as "an individual who self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native, or who self-identifies as gay, lesbian, bisexual, or transgender."

**Enforcement of California's diversity quotas**

19.     The Secretary must publish an annual report on the Office's website listing the number of corporations that (1) were in compliance with the California's diversity quotas during at least one point of the year; (2) moved their headquarters either to or from California during the year; or (3) stopped being publicly traded over the course of the year.

20.     Publicly held companies that are headquartered in California must file an annual statement with the Secretary which discloses whether the company complies with the diversity quotas.

21.     The Secretary is authorized to impose fines for the violation of the diversity quotas.

22.     A first violation results in a $100,000 fine. Any subsequent offense is $300,000. Each seat that must be filled by a woman or a member of an underrepresented community but is not so filled constitutes a separate violation.

23.     A corporation's failure to report or to timely report whether it complies with the quotas is subject to a $100,000 fine.

*Complaint for Declaratory
and Injunctive Relief*

5

**PLAINTIFF'S INJURY**

24.     California's diversity quotas are designed to compel the election of more racial minorities, women, and LGBTQ individuals onto corporate boards of directors. In order to achieve its goal, the law must impact the behavior of shareholders like National Center, who are responsible for electing the board of directors at annual meetings.

25.     National Center opposes the adoption of quotas for board spots that are based on immutable characteristics such as race, sex, and sexual orientation. In furtherance of this position, National Center has put forward shareholder proposals which would forbid consideration of characteristics such as race, sex, and sexual orientation in the selection of directors.

26.     Shareholders elect board members. Indeed, the only way that a person can be elected as a director is if shareholders vote in favor at the annual shareholder meeting.

27.     Many of the impacted companies that National Center invests in, such as Twitter, have adopted a majority voting standard for the election of directors. This policy makes companies particularly responsive to shareholder voting and demands. Companies are increasingly adopting majority voting standards to improve accountability to shareholders. Alphabet, for instance, did so in 2021.

28.     Individual shareholders or groups of shareholders may also submit names of candidates for election to the board of directors.

29.     The diversity quotas therefore impose a race, sex, and sexual orientation-based quota directly on shareholders, and seek to force shareholders to perpetuate race, sex, and sexual orientation-based discrimination.

30.     National Center intends to vote on board member nominees at upcoming annual meetings for the companies that it holds shares in, as well as at subsequent meetings. In the future, the National Center also plans to put forward qualified

*Complaint for Declaratory*
*and Injunctive Relief*

1 candidates for a company's board of directors who support National Center's vision.

2     31.    Prior to the passage of the diversity quotas, shareholders were free to

3 consider nominees for the Board on their merits, without a legal requirement that

4 they consider race, sex, and sexual orientation.

5     32.    The diversity quotas injure Plaintiff's right to vote for the candidate of

6 its choice, free of a government-imposed race, sex, and sexual orientation quota.

7     33.    The diversity quotas contain race, sex, and sexual orientation-based

8 classifications that harm individual shareholder voting rights directly, separate from

9 any injury to the corporation.

10     34.    The diversity quotas directly undermine National Center's efforts to put

11 forward proposals that bar corporations from considering characteristics such as race,

12 sex, and sexual orientation in the selection of directors. Indeed, the diversity quotas

13 impose a state mandated requirement that publicly traded corporations and their

14 shareholders consider race, sex, and sexual orientation in the selection of directors.

15     35.    Because many of the companies that National Center invests in do not

16 currently have the requisite number of diverse directors on their boards, these

17 companies will be subject to fines unless the shareholders vote according to the

18 challenged quotas.

19     36.    Many of the impacted companies such as Alphabet and Twitter hold their

20 shareholder meetings in the summer, which means that the companies and their

21 shareholders will feel pressure to nominate and elect more racial minorities, women,

22 and LGBTQ individuals months before the diversity quotas ramp up.

23     37.    An actual and substantial controversy currently exists between Plaintiff

24 and Defendant as to their respective legal rights and duties. Plaintiff contends that

25 the diversity quotas impose race, sex, and sexual orientation-based classifications that

26 violate the Fourteenth Amendment to the United States Constitution. Defendant

27 disputes that the quotas, or that enforcing the quotas, is unconstitutional.

28

*Complaint for Declaratory*
*and Injunctive Relief*

081fdce2e485a090

1
2
3
4
5

38.    A judgment declaring the diversity quotas are unconstitutional and enjoining Defendant from enforcing the laws will restore National Center's ability to vote free of a government mandated race, sex, and sexual orientation quota as well as reduce a major impediment to National Center's efforts to advocate that board members should be selected based on merit and not immutable characteristics.

6
7

**CLAIM FOR RELIEF**
**Equal Protection Clause of the Fourteenth Amendment**
**and 42 U.S.C. § 1983**

8
9
10

39.    Under the Fourteenth Amendment to the United States Constitution, "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1.

11
12

40.    The diversity quotas facially discriminate on the basis of race, sex, and sexual orientation.

13
14

41.    The diversity quotas serve no important nor compelling government interest.

15
16
17

42.    Defendant does not have specific evidence of discrimination against racial minorities, women, or sexual minorities, sufficient to justify the diversity quotas.

18
19

43.    Defendant may not rely on societal, rather than government sponsored discrimination, to justify a quota based on immutable characteristics.

20
21

44.    Disparity in board membership alone is not sufficient evidence of discrimination.

22
23

45.    Increasing the representation of racial, sex, or sexual minorities for its own sake is not an important nor compelling government interest.

24
25
26

46.    Any interest Defendant has in enforcing the diversity quotas is undermined by the fact that racial and sexual minorities and women are increasingly being appointed to corporate boards even without a government mandate.

27

47.    Even if the diversity quotas served an important or compelling

28

*Complaint for Declaratory*
*and Injunctive Relief*

8

government interest, the mechanism that the diversity quotas use—a rigid and arbitrary quota—is not sufficiently tailored to that interest.

48.     The diversity quotas are not sufficiently tailored because they apply evenly to every publicly traded company across all industries, regardless of the hiring pool or the company's historical hiring patterns.

49.     The diversity quotas are not sufficiently tailored because they impose a race, sex, and sexual orientation quota in perpetuity regardless of changes in representation in future years.

50.     The diversity quotas discriminate on the basis of race, sex, and sexual orientation in violation of the Equal Protection Clause.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment from this Court as follows:

1.     A declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, that California's diversity quotas discriminate on the basis of race, sex, and sexual orientation and deny individuals equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 and 1983.

2.     A permanent injunction preventing Defendant from enforcing or taking further action to enforce the diversity quotas insofar as they discriminate on the basis of race, sex, and sexual orientation and deny individuals equal protection of the laws in violation of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §§ 1981 and 1983.

3.     An award to Plaintiff of nominal damages.

4.     An award to Plaintiff of reasonable attorneys' fees and expert fees for bringing and maintaining this action, including under 42 U.S.C. § 1988.

5.     An award to Plaintiff of costs of suit pursuant to Federal Rule of Civil

*Complaint for Declaratory*
*and Injunctive Relief*

1   Procedure 54(d); and

2       6.      An award to Plaintiff of any other further relief that the Court deems

3   just and proper under the circumstances of this case.

4

5   DATED: November 22, 2021.

6                                           Respectfully submitted,

7

8                                           By: s/ANASTASIA P. BODEN
                                                ANASTASIA P. BODEN
9

10                                          ANASTASIA P. BODEN
                                            JOSHUA P. THOMPSON
11                                          DANIEL M. ORTNER
                                            Pacific Legal Foundation
12                                          555 Capitol Mall, Suite 1290
                                            Sacramento, California 95814
13                                          Telephone: (916) 419-7111
                                            Facsimile: (916) 419-7747
14                                          ABoden@pacificlegal.org
                                            JThompson@pacificlegal.org
15                                          DOrtner@pacificlegal.org

16                                          *Attorneys for Plaintiff National Center for
                                            Public Policy Research*

17

18

19

20

21

22

23

24

25

26

27

28

*Complaint for Declaratory
and Injunctive Relief*

10