1    Rob Bonta, State Bar No. 202668
     Attorney General of California
2    Michael L. Newman, State Bar No. 222993
     Senior Assistant Attorney General
3    Laura L. Faer, State Bar No. 233846
     Vilma Palma-Solana, State Bar No. 267992
4    Supervising Deputy Attorneys General
     Lisa Cisneros, State Bar No. 251473
5    Delbert Tran, State Bar No. 323993
     Sophia Carrillo, State Bar No. 326428
6    Deputy Attorneys General
       455 Golden Gate Ave., Suite 11000
7      San Francisco, CA 94102-7004
       Telephone:  (415) 510-3438
8      E-mail:  Lisa.Cisneros@doj.ca.gov
     *Attorneys for Defendant California*
9    *Secretary of State Shirley N. Weber*

10                    IN THE UNITED STATES DISTRICT COURT

11                   FOR THE EASTERN DISTRICT OF CALIFORNIA

12

13

14

| | |
|---|---|
| 15  National Center for Public Policy Research, | 2:21-cv-02168 |
| 16  Plaintiff, | |
| 17  v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SECRETARY OF STATE'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
| 18 | |
| 19  Shirley N. Weber, in her official capacity as Secretary of State of the State of California, | |
| 20  Defendant. | Date:          April 19, 2022 |
| 21 | Time:          1:30 PM<br>Dept:          6<br>Judge:         Judge John A. Mendez |
| 22 | Trial Date:   TBD<br>Action Filed:  Nov. 22, 2021 |

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ......................................................................................................... 1

BACKGROUND ......................................................................................................... 2

    I.     SB 826 and AB 979 Addressed Discrimination in Board Selection on
          California's Largest Public Corporations ............................................. 2

    II.    SB 826 and AB 979 Provide Flexibility Such That Corporations Can
          Increase Diversity Without Excluding Existing or Potential Directors ................. 3

    III.   The National Center Complaint .............................................................. 5

LEGAL STANDARDS ............................................................................................... 5

ARGUMENT ............................................................................................................... 6

    I.     Plaintiff Has Failed to Allege a Facial Equal Protection Claim ................. 6

         A.    The Facial Challenge to SB 826 Must Be Dismissed. ................. 6

         B.    The Facial Challenge to AB 979 Must Be Dismissed. ................. 7

    II.    Plaintiff's Claim is Not Prudentially Ripe for Adjudication ................. 10

         A.    Plaintiff's Claim is Not Fit for Judicial Decision. ................. 10

         B.    Plaintiff's Hardships Do Not Justify the Premature Exercise of
            Jurisdiction. ............................................................................. 12

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

CASES

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
824 F.3d 1156 (9th Cir. 2016)..................................................................... 5

*Collins v. Yellen*
141 S. Ct. 1761 (2021) ............................................................................... 14

*Colwell v. Dep't of Health & Human Servs.*
558 F.3d 1112 (9th Cir. 2009)............................................................... 5, 12

*Doe v. Kamehameha*
470 F.3d 827 (9th Cir. 2006)................................................................. 8, 13

*GeorgiaCarry.Org, Inc. v. Georgia*
687 F.3d 1244 (11th Cir. 2012).................................................................. 9

*Lujan v. Defenders of Wildlife*
504 U.S. 555 (1992)................................................................................... 14

*Meland v. Weber*
2 F.4th 838 (9th Cir. 2021) .................................................................. 14, 15

*Meland v. Weber*
No. 2:19-cv-02288-JAM-AC, 2021 WL 6118651 (E.D. Cal.) ................... 2, 6, 7, 15

*N.Y. State Club Ass'n v. City of New York*
487 U.S. 1 (1988)........................................................................................ 9

*Nat'l Inst. of Family & Life Advocates v. Harris*
839 F.3d 823 (9th Cir. 2016).................................................................... 10

*Oklevueha Native Am. Church of Haw., Inc. v. Holder*
676 F.3d 829 (9th Cir. 2012)..................................................................... 12

*Puente Ariz. v. Arpaio*
821 F.3d 1098 (9th Cir. 2016)..................................................................... 7

*S.D. Myers, Inc. v. City & County of San Francisco*
253 F.3d 461 (9th Cir. 2001)....................................................................... 7

*San Diego Cnty. Gun Rights Comm. v. Reno*
98 F.3d 1121 (9th Cir. 1996)..................................................................... 12

ii

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Thomas v. Anchorage Equal Rights Comm'n*
   220 F.3d 1134 (9th Cir. 2000)...................................................................... 10, 12, 13

*U.S. West Commc'ns v. MFS Intelenet, Inc.*
   193 F.3d 1112 (9th Cir. 1999)...................................................................... 10, 12, 15

*United States v. Salerno*
   481 U.S. 739 (1987)...................................................................................... 6, 7, 9

*United Steelworkers of Am. v. Weber*
   443 U.S. 193 (1979)...................................................................................... 8, 11

*Wash. State Grange v. Wash. State Republican Party*
   552 U.S. 442 (2008)...................................................................................... 7, 10

**FEDERAL STATUTES**

17 Code of Federal Regulations
   § 240.14a-8 ............................................................................................................ 14

29 Code of Federal Regulations
   § 1608, et seq. ........................................................................................................ 9
   § 1608.1, et seq. ..................................................................................................... 8

15 United States Code § 78j-1 ..................................................................................... 14

**STATE STATUTES**

California Assembly Bill No. 979 (2019-2020 session) .................................................. 1, 3, 8, 11

California Code of Regulations title 2, § 11011 (2021)................................................. 9

California Corporations Code
   § 301.3.................................................................................................................. 3, 4, 15
   § 301.4.................................................................................................................. *passim*

California Government Code § 11346.4 ....................................................................... 13

California Government Code § 11346.45 ..................................................................... 13

California Senate Bill No. 826 (2017-2018 session) ..................................................... 1, 2, 3

**CONSTITUTIONAL PROVISIONS**

United States Constitution Fourteenth Amendment Equal Protection Clause................................ 1

# TABLE OF AUTHORITIES
### (continued)

**Page**

United States Constitution Article III ............................................................... 10, 14, 15

United States First Amendment ............................................................................... 7

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12 ............................................................................................... 5, 6, 10

**OTHER AUTHORITIES**

Apple's Plan to Improve Its Diversity, Jan. 6, 2014,
https://www.diversityinc.com/apples-plan-improve-diversity/................................. 9

California Secretary of States's Business Search page,
https://businesssearch.sos.ca.gov/ ............................................................ 15

15 Moore's Federal Practice – Civil § 101.76[b] and [c] ........................................... 10

**INTRODUCTION**

In 2018 and 2020, the California Legislature enacted Senate Bill No. 826 (SB 826) and Assembly Bill No. 979 (AB 979), respectively, to advance compelling and important state interests in remedying discrimination and promoting diversity on the boards of our State's largest and most influential corporations, those corporations that are publicly held. These statutes reflect a necessary remedy enacted by the Legislature, only after many other efforts spanning decades had failed to address discrimination and increase diverse representation on the boards of directors of California corporations. Through SB 826 and AB 979, the Legislature created a flexible floor for board diversity that takes effect incrementally over years, required annual reporting and monitoring by the Secretary of State (Secretary) on board diversity, and provided discretion for her to issue regulations to impose penalties for corporations falling short of the diversity requirements, if she deemed it appropriate.

This lawsuit is the most recent of five actions filed over the past three years to block these efforts, three of which are now before this Court. None of the lawsuits are brought by publicly held corporations regulated by these statutes. The Plaintiff in this suit is the National Center for Public Policy Research (Plaintiff), a Washington D.C. based non-profit that alleges it owns an undisclosed number of shares in 14 publicly held corporations subject to the corporate diversity statutes. Plaintiff presents one claim for relief, a facial challenge to both SB 826 and AB 979 under the Equal Protection Clause of the Fourteenth Amendment of the U.S. Constitution. Plaintiff's constitutional challenge is based on the statutes' text alone without reference to any particular application of the statutes or circumstances related to a corporation's board, its director selection practices, or the Secretary's exercise of her regulatory or enforcement authority.

The Secretary moves to dismiss Plaintiff's Equal Protection claim on the basis that the Complaint has failed to state a cognizable facial challenge and is unripe for adjudication. First, as this Court held with respect to SB 826 in *Alliance for Fair Board Recruitment v. Weber* (*Alliance*), Plaintiff's SB 826 facial challenge cannot prevail because the challenged law is not unconstitutional in all applications. Thus, Plaintiff's one and only claim, to the extent it

1

challenges SB 826, must be dismissed with prejudice as it was in *Alliance*. Second, the same claim, to the extent it alleges a facial challenge to AB 979, should also be dismissed. There are a number of circumstances in which AB 979 can be applied consistent with federal law that permits private actors to remedy past discrimination. Finally, Plaintiff's claim is not ripe, and this Court should decline to exercise jurisdiction on prudential grounds. SB 826's diversity requirements took full effect less than two months ago. AB 979's requirements take full effect at and the end of 2022. The board data reported to the Secretary is evolving, and she has not taken any action to promulgate any regulation or otherwise enforce the diversity requirements, and it is premature to exercise jurisdiction.

## BACKGROUND

**I.   SB 826 AND AB 979 ADDRESSED DISCRIMINATION IN BOARD SELECTION ON CALIFORNIA'S LARGEST PUBLIC CORPORATIONS**

SB 826 was passed to address compelling state interests: to remedy longstanding discrimination against women in the corporate director selection process, and to increase gender diversity on publicly held California boards for the benefit of California retirees, taxpayers, and the State's economy. *E.g.*, SB 826, § 1(a), (c)(1)-(5), (e)(1)-(4), (f); *see also* Order Denying Pl.'s Mot. Prelim. Inj., *Meland v. Weber*, No. 2:19-cv-02288-JAM-AC, ECF No. 67, 2021 WL 6118651, at *5 (recognizing that the legislature had determined the existence of discrimination). For example, the Legislature considered that, in 2017, a quarter of California's public companies in the Russell 3000 index—companies that represent $5 trillion in market capitalization—had no women on their boards, and for the remaining companies, women held just 15.5 percent of corporate board seats. SB 826 § 1(e), (e)(1); *see also id.* § 1(f)(3) (nearly half of the 75 largest initial public offerings from 2014 to 2016 and many technology companies in California went public with no women on their boards).

The Legislature also found that gender diversity on boards benefits corporate performance. *Id.* § 1(c)(4). In companies with market capitalization of at least $10 billion, those with women directors outperformed comparable businesses with all-male boards by 26 percent, and companies with three or more women directors reported earnings per share 45 percent higher than companies

2

1    with all-male boards. *Id.* § 1(c)(4), (1). The Legislature found that the exclusion of women from

2    boards also has real economic consequences for corporations and California residents, taxpayers,

3    and retirees, including retired state employees and teachers with pension plans, and that without

4    proactive measures to increase gender diversity on corporate boards, it would take decades to

5    overcome existing disparities. *Id.* § 1(a), (c), (f), (g).

6         Similarly, the Legislature adopted AB 979 upon findings that discrimination, both structural

7    and systemic, have resulted in stark disparities in the racial and ethnic composition of corporate

8    boards. *See, e.g.*, AB 979 § 1(d), (e) (as of 2020, 233 of 662 of publicly traded companies

9    headquartered in California had all-white boards of directors, and 100% had at least one white

10   board member; whereas only 13% had a Latino board member, 16% had an African American

11   board member, 42% had an Asian American board member); § 1(k), (l) (citing reports

12   demonstrating exclusion of otherwise qualified racial minorities from managerial and executive

13   positions that are the pipeline to the corporate boardroom). As with SB 826, the Legislature cited

14   evidence that more diverse boards are associated with better corporate performance, including

15   one study that found an increase in earnings for every 10% increase in racial and ethnic diversity

16   on senior-executive teams and another that found the high-tech industry could generate an

17   additional $300-370 billion each year if the racial or ethnic diversity of tech companies'

18   workforces reflected that of the talent pool. AB 979 § 1(m), (n).

19   **II.    SB 826 AND AB 979 PROVIDE FLEXIBILITY SUCH THAT CORPORATIONS CAN**
20          **INCREASE DIVERSITY WITHOUT EXCLUDING EXISTING OR POTENTIAL DIRECTORS**

21        The requirements of SB 826 and AB 979 apply only to publicly held corporations with

22   shares on a major U.S. stock exchange that have their principal executive offices in California.

     Cal. Corp. Code §§ 301.3(a), (f)(2); 304.4(a), (f)(2); 2115.5; 2115.6. As of 2019, SB 826 required
23
     covered corporations to have at least one female director on their board. Cal. Corp. Code
24
     § 301.3(a). By the end of 2021, covered corporations must have at least two female directors on
25
     five-member boards and three female directors on boards of six members or more. *Id.* § 301.3(b).
26
          AB 979 is structurally similar to, but substantively different from, SB 826, in that it calls
27
28   for the inclusion of directors from historically and currently marginalized racial and non-race

based communities. *See* Cal. Corp. Code §§ 301.3, 301.4, 2115.5, 2115.6. It requires covered corporations to have a minimum of one director from an underrepresented community by the end of 2021. Cal. Corp. Code §§ 301.4(a), 2115.6. By the end of 2022, AB 979 requires that covered corporations with a board size of at least four but fewer than nine directors have at least two directors from underrepresented communities and those with nine or more directors have at least three directors from underrepresented communities. Cal. Corp. Code § 301.4(b). The Legislature defined "director from an underrepresented community" as "an individual who self-identifies as Black, African American, Hispanic, Latino, Asian, Pacific Islander, Native American, Native Hawaiian, or Alaska Native, or who self-identifies as gay, lesbian, bisexual, or transgender." Cal. Corp. Code § 301.4(e)(1). This means that corporations can comply with AB 979 by adding new directors who identify as gay, lesbian, bisexual, or transgender (LGBT) without adding directors from any racial minority group.

The Legislature explicitly provided corporations subject to SB 826 and AB 979 flexibility to comply with their terms without excluding any sitting or potential director based on gender or lack of membership in an underrepresented group: "A corporation may increase the number of directors on its board to comply with this section." Cal. Corp. Code §§ 301.3(a) and 301.4(a).

SB 826 required the Secretary to publish a report by July 1, 2019, documenting the number of covered corporations with at least one female director on their boards, and by March 1, 2020, and annually thereafter, to publish reports documenting the number of covered corporations that are in compliance with SB 826, that move their headquarters in or out of California, and/or that cease to be publicly traded. Cal. Corp. Code § 301.3(c), (d). AB 979 requires the Secretary to include similar information regarding compliance for directors from underrepresented communities in an annual report starting in March 2022. Cal. Corp. Code § 301.4(c). While the Secretary may promulgate regulations and impose fines to implement SB 826 and AB 979, the laws do not require the Secretary to enforce the requirements through regulations, fines, or any other action. Cal. Corp. Code §§ 301.3(e)(1) and 301.4(d)(1).

### III.   THE NATIONAL CENTER COMPLAINT

According to the Complaint, Plaintiff National Center is a non-profit 501(c)(3) organization that "owns shares in many companies that are traded on the NASDAQ, NYSE, and other large exchanges, including at least fourteen companies that are subject to [SB 826 and AB 979], including Alphabet, Apple, Cisco, Facebook, Intel, Intuit, Levi Strauss, Netflix, PayPal, Pinterest, Salesforce, Tesla, Twitter, and Wells Fargo." Compl. ¶¶ 4-5. Plaintiff alleges it "will continue to invest in additional companies as resources and opportunities permit." Compl. ¶ 5.

Without specifying any particular non-compliant corporation, Plaintiff generally alleges that "many of the companies [Plaintiff] invests in do not currently have the requisite number of diverse directors on their boards." Compl. ¶ 35. The Complaint does not allege that the Secretary has issued or taken any steps to issue regulations to implement the statutes or that the Secretary has issued or threatened to issue fines to corporations that fail to comply with California's board diversity statues. Nor does Plaintiff allege any particular facts about the composition of boards or board nominees for any specific publicly held corporations headquartered in California in which Plaintiff holds shares. The single count in the Complaint alleges that SB 826 and AB 979 on their face violate the Equal Protection Clause because they discriminate on the basis of race, sex, and sexual orientation. Compl. ¶¶ 39-50.

### LEGAL STANDARDS

Dismissal under Federal Rule of Civil Procedure 12(b)(6) is proper where a plaintiff fails to state a cognizable legal theory or fails to allege sufficient facts to state a plausible claim for relief. *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016). A complaint "must provide sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively" and "the underlying factual allegations must plausibly suggest an entitlement to relief." *Id.* (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (internal quotation marks and alterations omitted)).

Plaintiffs bear the burden of proving their claim is ripe. *See Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009). "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit affidavits or other evidence properly before the court

5

1  . . . . It then becomes necessary for the party opposing the motion to present affidavits or any

2  other evidence to satisfy its burden of establishing that the court, in fact, possesses subject matter

3  jurisdiction." *Id.* (cleaned up).

4  **ARGUMENT**

5  **I.    PLAINTIFF HAS FAILED TO ALLEGE A FACIAL EQUAL PROTECTION CLAIM.**

6        The Secretary moves to dismiss, pursuant to Rule 12(b)(6), Plaintiff's sole claim as an

7  inadequately alleged facial challenge to SB 826 and AB 979. In *Alliance*, No. 2:21-cv-01951-

8  JAM-AC, a case related to this action, the plaintiff organization has challenged SB 826 and

9  AB 979 on the same equal protection grounds alleged in this case. The Secretary recently moved

10  to dismiss the *Alliance* plaintiff's facial challenges against both statutes, and the Court granted the

11  motion to dismiss with prejudice as to the sole claim against SB 826. *Alliance*, ECF Nos. 41, 73.

12  The Secretary's arguments in *Alliance* and the Court's ruling granting in part her motion bear on

13  the facial claim in this case as well.

14      **A.    The Facial Challenge to SB 826 Must Be Dismissed.**

15        In *Alliance*, as to the plaintiff's first count, its Equal Protection claim against SB 826, the

16  Court granted the Secretary's motion to dismiss with prejudice, and a dismissal order should

17  similarly issue in this case. *Id.*, ECF No. 72, Jan. 11, 2021 Hrg. Tr. 27:21-24. The Court reasoned

18  that under *United States v. Salerno*, 481 U.S. 739, 745 (1987), a facial challenge must fail unless

19  the plaintiff establishes that all applications of the challenged law are unconstitutional. Hrg. Tr. at

20  27:4 -28:3. In *Meland v. Weber*, No. 2:19-cv-02288-JAM-AC, ECF No. 67, another case related

21  to this action, which challenges SB 826 as well, the Court denied preliminary relief, holding

22  among other things, that: intermediate scrutiny applied; remedying discrimination constituted an

23  important state interest; an abundance of evidence supported the Legislature's determination that

24  sex discrimination existed in the selection of directors for public corporate boards; the Legislature

25  acted to remedy discrimination with SB 826; and SB 826 substantially relates to its remedial goal.

26  *Id.* at 9, 11, 17, 21. Thus, the Court reasoned that the *Alliance* plaintiff could not plausibly allege

27  that all applications of SB 826 were unconstitutional. *Alliance*, ECF No. 73, Hrg. Tr. at 9:6-14,

28  13:25-14:19, 27:4 -28:3. The same reasoning applies to Plaintiff in this case, who similarly

6

1   alleges a facial challenge to SB 826 on equal protection grounds. Compl. ¶¶ 9-13, 39-50. Given

2   the Court's rulings in *Meland* and *Alliance*, Plaintiff in this case cannot plausibly allege that all

3   applications of SB 826 are unconstitutional. Consistent with this Court's recent order in *Alliance*,

4   the Secretary requests dismissal with prejudice of Plaintiff's sole claim against SB 826, its Equal

5   Protection claim on facial grounds.

6           **B.     The Facial Challenge to AB 979 Must Be Dismissed.**

7           In *Alliance*, the Secretary also moved to dismiss the plaintiff's second and third counts,

8   which both alleged that AB 979, on its face, discriminates based on race and ethnicity. *Alliance*,

9   ECF No. 41. However, this Court declined to dismiss those facial claims. *Alliance*, ECF No. 73,

10  Hrg. Tr. at 32:3-6. While the Secretary recognizes that the Court has already rejected the

11  Secretary's AB 979 arguments in *Alliance*, those arguments are repeated here to preserve the

12  issue for appeal, and an additional argument is made for the Court's consideration, explaining

13  why Plaintiff's facial claim against AB 979 cannot go forward given the *Salerno* rule.

14          A facial challenge to a law is "the most difficult challenge to mount successfully[.]"

15  *Salerno*, 481 U.S. at 745. Even if the challenged law "might operate unconstitutionally under

16  some conceivable set of circumstances[,]" *id.*, a facial challenge must fail unless the plaintiff

17  establishes "that the law is unconstitutional in all of its applications," *Wash. State Grange v.*

18  *Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (citing *Salerno*, 481 U.S. at 745); *see*

19  *also S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 467-68 (9th Cir. 2001)

20  (affirming the continued validity of *Salerno* outside of First Amendment and abortion cases);

21  *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016) ("[W]e have chosen to continue

22  applying *Salerno*.").

23          AB 979 expressly provides that "[a] corporation may increase the number of directors on its

24  board" to come into compliance. Cal. Corp. Code § 301.4(a). Unlike a rigid numerical or

25  proportional quota, AB 979 establishes a flexible floor for the inclusion of individuals from

26  underrepresented communities. Candidates who do not self-identify as members of an

27  underrepresented community are not restricted from membership on corporate boards. To the

28  contrary, for every underrepresented director added to a corporation's board, non-

1   underrepresented board members may also be added and so all candidates that a corporation

2   wishes to select can be included. As a result, AB 979 does not necessarily disadvantage any

3   candidate seeking to join a board.

4        Corporations can also achieve compliance without adding directors who are members of an

5   underrepresented community. Consider, for example, a corporation of nine directors, two of

6   whom self-identify with an underrepresented community and seven of whom do not. If one of the

7   seven directors were to retire, the corporation could reduce the size of the board to retain the eight

8   remaining directors and automatically come into compliance with AB 979. *See* Cal. Corp. Code

9   § 301.4(b)(1)-(2). Because AB 979 does not require corporations to appoint new board members

10  at all, it follows that the laws do not require shareholders to consider race or LGBT status in the

11  selection of new board members.

12       Moreover, the flexibility afforded under AB 979 guarantees that a corporation can appoint

13  new directors through a board selection process that is neutral as to race, sex, and sexual

14  orientation. For example, a corporation can conduct a first round of appointments through an

15  anonymous screening process that does not reveal the race or LGBT status of the persons under

16  consideration. If the composition of the board did not comport with AB 979 after this initial

17  selection process, the corporation could add positions through a further blind process until it

18  achieved compliance with AB 979.

19       Critically, the statutes and Plaintiff's facial challenge implicate both state and private

20  action. The Legislature identified race discrimination that systematically affected the selection of

21  board directors for public corporations. *See e.g.*, AB 979 § 1(d), (e), (k), (l). And, at the same

22  time, private actors rather than public administrators select the members of the corporation's

23  board. *See* AB 979 § 1(t) (recognizing that corporations, rather than governments, select their

24  board directors). Federal law authorizes private corporations to adopt race conscious programs to

25  remedy past discrimination and manifest imbalances in the workplace. *See United Steelworkers of*

26  *Am. v. Weber*, 443 U.S. 193, 209 (1979) (Title VII does not prohibit all race-conscious actions

27  taken by employers); 29 C.F.R § 1608.1, et seq. (2021) (regulations for permissible affirmative

28  action plans under Title VII); *Doe v. Kamehameha*, 470 F.3d 827, 840 (9th Cir. 2006) (citing

8

1  *Weber* and restating the requirements for a private remedial plan to comport with Title VII—the

2  plan (1) must respond to a manifest imbalance in the work force; (2) must not "unnecessarily

3  trammel" the rights of members of the non-preferred class or "create an absolute bar to their

4  advancement"; and (3) must do no more than necessary to attain a balance); *see also* Cal. Code of

5  Regs. tit. 2, § 11011 (2021) (adopting Equal Opportunity Commission regulations at 29 C.F.R. §

6  1608, et seq. for private employer's affirmative action plan, which includes race-conscious short

7  range, goals). Corporations can establish and justify a program to remedy discrimination, and

8  thus, AB 979 merely requires the type of remedial measure already permitted by federal law for

9  corporations to adopt where, as here, discrimination in board selection has existed.[1]

10      The Eleventh Circuit's decision in *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244,

11  1261, 1266 (11th Cir. 2012) is instructive. In this case, the Court affirmed dismissal under

12  *Salerno* of a constitutional challenge because of a foreseeable permissible application of the state

13  statute restricting the carrying of weapons in certain locations. The Eleventh Circuit reasoned that

14  there was no constitutional infirmity when the state statute merely vindicated a right that the

15  private property owners already had. *Id.* at 1264. *See also N.Y. State Club Ass'n v. City of New*

16  *York*, 487 U.S. 1 (1988) (rejecting a facial challenge against a New York City local law

17  forbidding discrimination in certain private clubs and membership organizations in light of

18  existing Supreme Court precedents upholding state law barring similar discrimination). Here,

19  corporations are already permitted to adopt race-conscious programs to remedy discrimination.

20  There is no reason to assume, absent a specific director selection decision or enforcement action,

21  that a covered corporation or the Secretary would not apply AB 979 in a manner consistent with

22  existing non-discrimination law. Here, the Secretary has not yet proposed or adopted

23  implementing regulations that would set forth the process and criteria for identifying non-

24  compliant corporations and imposing fines. Given that AB 979 can apply to particular

25  corporations without violating equal protection principles, Plaintiff cannot plausibly allege that in

26

27      [1] For example, Apple, Inc. in 2014 added to its Nominating and Governance Charter a provision "commit[ing] to actively seek out highly qualified women and individuals from minority groups to include in the pool from which Board nominees are chosen." Apple's Plan to

28  Improve Its Diversity, Jan. 6, 2014, https://www.diversityinc.com/apples-plan-improve-diversity/.

1  all instances, the application of AB 979 would be unconstitutional. Thus, its facial claim must be

2  dismissed with prejudice. *Wash. State Grange*, 552 U.S. at 449.

3  **II.    PLAINTIFF'S CLAIM IS NOT PRUDENTIALLY RIPE FOR ADJUDICATION.**

4         Plaintiff's Equal Protection claim should also be dismissed because it is unripe.[2] The Ninth

5  Circuit has recognized that the threshold question of ripeness "'is drawn both from Article III

6  limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction.'"

7  *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000) (quoting *Reno*

8  *v. Catholic Soc. Servs., Inc.,* 509 U.S. 43, 57 n.18 (1993)). [T]he ripeness inquiry contains both a

9  constitutional and a prudential component." *Id.* "[E]ven if a case is constitutionally ripe, [the

10  courts] have discretionary power to decline jurisdiction." *Nat'l Inst. of Family & Life Advocates*

11  *v. Harris*, 839 F.3d 823, 833 (9th Cir. 2016). "Principles of federalism lend [the ripeness] doctrine

12  additional force when a federal court is reviewing a state agency [action] at an interim stage in an

13  evolving process." *U.S. West Commc'ns v. MFS Intelenet, Inc.*, 193 F.3d 1112, 1118 (9th Cir.

14  1999). When assessing prudential ripeness, courts consider "'the fitness of the issues for judicial

15  decision and the hardship to the parties of withholding court consideration.'" *Thomas*, 220 F.3d at

16  1141 (quoting *Abbott Lab. v. Gardner*, 387 U.S. 136, 149 (1967)).

17  **A.    Plaintiff's Claim Is Not Fit for Judicial Decision.**

18         In considering whether a claim is fit for judicial review, the relevant factors include the

19  "finality of agency action" and "whether further factual development of issues is []likely to have a

20  significant effect on the legal issue before the court." 15 Moore's Federal Practice – Civil

21  § 101.76[b] and [c]. Here, both factors provide the Court with sound prudential reasons for

22  withholding jurisdiction because the Secretary has not yet taken any action to adopt implementing

23  regulations and no enforcement action has occurred that would allow the Court to scrutinize

24  whether AB 979 infringes Plaintiff's rights, as opposed to protecting the rights of qualified

25  directors from underrepresented communities from ongoing and past discrimination.

26  ───────────────────
        [2] The Secretary reserves argument to challenge Plaintiff's Article III constitutional
27  standing and alleged injuries at a later stage of the proceeding, and to challenge Plaintiff's
    standing to bring equal protection challenges and to seek particular remedies, including but not
    limited to appropriate discovery and in the event Plaintiff is able to amend the Complaint to
28  allege as-applied equal protection claims. Fed. R. Civ. P. 12(b)(1), (h)(3).

In enacting AB 979, the California Legislature recognized that federal law directly permits the imposition of affirmative action plans to address past discrimination and patterns of discrimination. AB 979 § 1(q); *see also Weber*, 443 U.S. at 197 (holding that under Title VII the private sector is free to establish race-conscious measures "to eliminate manifest racial imbalances"). The Legislature did not dictate the circumstances under which the diversity minimums set forth in AB 979 would be enforced. Rather, it required the Secretary to publish public reports with data about the number of corporations in compliance "during at least one point during the preceding calendar year." AB 979 § 3 (adding Cal. Corp. Code § 301.4(c)(1)). And, it separately provided her with discretionary authority to promulgate implementing regulations and impose fines. AB 979 § 3 (adding Cal. Corp. Code § 301.4(d)(1)).

Accordingly, since 2020 the Secretary has undertaken steps to gather information and monitor publicly held corporations as required by AB 979. Bogart Decl. ¶ 6. By March 1, 2022, the Secretary is required to issue the first annual report indicating the number of corporations in compliance with AB 979's diversity requirements during at least one point in 2021, as well as the number of publicly held corporations that moved their headquarters out of California and that ceased to be publicly traded. *See* Cal. Corp. Code § 301.4(c).

Thus far, the Secretary has not taken any steps to propose or promulgate implementing regulations, imposed fines, or begun any process for imposing fines on non-compliant corporations as defined in AB 979. Bogart Decl. ¶ 17. In fact, because the Secretary has not adopted the necessary implementing regulations, the Secretary currently lacks the mechanism to impose fines. *See* Bogart Decl. ¶ 18. The information available to the Secretary regarding diversity on public boards is evolving. The Secretary's mandatory reports are and will be based on Corporate Disclosure Statements that provide information about board representation at only a single point in time during a given year. This information is therefore insufficient in and of itself to determine whether a corporation has violated the specific requirement of California Corporation Code section 301.4(d)(2)(B), which states that there is no violation where a director seat is held by a member of an underrepresented community for "a portion of the year." Bogart Decl. ¶ 21.

11

As such, Plaintiff's lawsuit seeks relief prematurely. The Secretary has not yet "crystaliz[ed]" her process or policy for enforcement, yet Plaintiff asks this Court to review state action that allegedly violates the Equal Protection Clause. *U.S. West Commc'ns*, 193 F.3d at 1118 (deferring review to allow the agency to "crystalize" its policies outweighed possible hardships caused by the delay). Further development of the record, such as the adoption of regulations or an enforcement action, "is necessary to delineate the boundaries of what [corporate] conduct" the state may regulate through AB 979 consistent with federal law. *San Diego Cnty. Gun Rights Comm. v. Reno*, 98 F.3d 1121, 1132 (9th Cir. 1996). The Legislature enacted AB 979 on a legal landscape that permits race conscious remedial programs. *See supra* at 10. At this time, the Court should not assume there is a scenario in which the enforcement of AB 979 pursuant to regulations would infringe on Plaintiff's rights, as opposed to protect the rights of qualified directors from underrepresented communities to join boards without facing the discriminatory barriers that have existed. *Id.* ("[T]he District Court should not be forced to decide constitutional questions in a vacuum.") (internal ellipsis omitted).

**B.    Plaintiff's Hardships Do Not Justify the Premature Exercise of Jurisdiction.**

In considering whether a case is ripe for review, courts must also evaluate "the hardship to the parties of withholding court consideration." *Thomas*, 220 F.3d at 1141. Hardship in the prudential ripeness context "does not mean just anything that makes life harder; it means hardship of a legal kind, or something that imposes a significant practical harm upon the plaintiff." *Colwell*, 558 F.3d at 1128. "Hardship serves as a counterbalance to any interest the judiciary has in delaying consideration in a case." *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012). Plaintiff, however, cannot demonstrate hardship because the harms it has alleged are ill-defined and insufficient, as discussed further below, to counter the State's interest. The State has strong interests in addressing known discrimination, reviewing and assessing compliance data that will become available this year and next, and assessing its regulatory and enforcement position after reviewing such data before the Secretary's actions are subject to judicial review. *See* Cal. Corp. Code § 301.4(b), (c) (first annual report on just the

1   requirement to have one board member from an underrepresented community is due on March 1,

2   2022); Bogart Decl. ¶ 21. Plaintiff's claimed harms are particularly weak because the Secretary's

3   exercise of regulatory authority include the opportunity for Plaintiff and other members of the

4   public to raise concerns and objections through the rulemaking process and make proposals to

5   address concerns of director candidates who are not from underrepresented communities. Cal.

6   Govt. Code §§ 11346.4, 11346.45. For example, the Secretary might devise regulations that allow

7   imposition of fines when non-compliance has been identified in conjunction with a finding of

8   discriminatory practices. *See Kamehameha*, 470 F.3d at 840 (remedial plan must do no more than

9   necessary to attain a balance).

10      The Complaint does not allege any significant harm to Plaintiff that would outweigh the

11  benefit of ensuring ripe issues that enable the Court to carefully consider whether AB 979

12  satisfies the Equal Protection Clause. Even if Plaintiff can establish injuries necessary for "a case

13  or controversy in a constitutional sense," this Court has discretion to decline to exercise

14  jurisdiction for prudential reasons. *Thomas*, 220 F.3d at 1141. Plaintiff alleges that it is harmed by

15  AB 979 because (1) it will not be free to "put forward" candidates for a company's board who

16  "support National Center's vision"; (2) its shareholder proposals to bar corporations from

17  considering director diversity will be rejected; and (3) Plaintiff will not be free to vote against

18  women directors or those from underrepresented communities. *See* Compl. ¶¶ 24-38.

19      First, Plaintiff claims that the statute interferes with its efforts to put forward director

20  candidates. Compl. ¶¶ 24, 30. As an initial matter, the Complaint does indicate whether or not

21  Plaintiff's desired candidates are from an underrepresented community. And, even if the

22  candidates were not part of an unrepresented community, the statute expressly permits the

23  addition of directors to accommodate all candidates, including Plaintiff's hypothetical ones, and

24  thus, it does not undermine Plaintiff's ability to put forward board candidates who support its

25  vision. Cal. Corp. Code § 301.4(a). Furthermore, Plaintiff fails to allege any plan to advance

26  particular director candidates for specific corporations or when it intends to undertake such

27  efforts. *See* Compl. ¶ 30. It is not even clear from the allegations whether Plaintiff intends to

28  nominate or recommend director candidates for specific corporations it has already identified.

13

1   Such vague allegations would be insufficient to establish an injury necessary for Article III

2   standing purposes, so surely they are inadequate to demonstrate hardship in the prudential

3   ripeness context. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) ("'[S]ome day'

4   intentions – without any description of concrete plans" are insufficient to establish injury.).

5        Second, Plaintiff alleges that AB 979 "directly undermine[s]" its efforts to put forward

6   proposals that bar corporations from considering characteristics such as race, sex, and sexual

7   orientation in the selection of directors. Compl. ¶ 34. But there are no allegations as to how this

8   interference by AB 979 occurs. Thus, the allegation appears vague and speculative, and it is not

9   apparent what hardship would arise by the Court's delay in adjudicating Plaintiff's claim. It is not

10  even evident from the Complaint that Plaintiff is eligible in the coming year to put forward

11  shareholder proposals for any of the particular corporations named. *See* 17 C.F.R. § 240.14a-8(b)

12  (shareholder must satisfy various requirements, such as a minimum ownership stake for defined

13  periods of time, before a public corporation must include its proposal in a proxy statement and

14  present it for vote). Moreover, AB 979 does not saying anything about shareholder proposals.

15  Nothing on the face of AB 979 stops Plaintiff from putting forth any kind of shareholder proposal

16  it chooses. And, in any event, shareholders do not have a cognizable legal right to put forth a

17  proposal without contrary law established by the SEC, the State of California, or anyone else; if

18  they did, they would have standing to challenge any law governing a corporation with which they

19  disagree, such as environmental or Sarbanes-Oxley Act requirements, *see e.g.* 15 U.S.C. § 78j-1.

20  If such a pliable, far-reaching shareholder harm were recognized, it would undermine the

21  recognized limitations on shareholder standing. *See Meland v. Weber*, 2 F.4th 838, 847-848 (9th

22  Cir. 2021) (discussing the limitations to shareholders standing); *Collins v. Yellen*, 141 S. Ct. 1761,

23  1779 (2021) (shareholder injury based on direct harm).

24       Third, without specifying any particular corporation, Plaintiff alleges that "many"

25  companies in which it invests are not compliant with AB 979, the corporations will feel pressure

26  to add more diverse directors, and Plaintiff, as a shareholder, will face pressure to vote for

27  directors on account of race and LGBT status. Compl. ¶¶ 35-36. Plaintiff's Complaint does not

28  explain the basis for this allegation. The Secretary has yet to publish her report compiling AB 979

14

data. Bogart Decl. ¶ 10. The allegation is also undermined by publicly available Corporate Disclosure Statements concerning the fourteen companies in which Plaintiff owns shares.[3] Compl. ¶ 5. Even if this general allegation of pressure is sufficiently concrete to constitute an injury-in-fact for Article III standing and to establish constitutional ripeness, it is not a significant hardship that overcomes the interests in delay for prudential ripeness purposes, especially when Plaintiff misapprehends the facts upon which it is asserting a harm.

The prudential arguments here in Part II have focused on AB 979 because Plaintiff's challenge to SB 826 should be dismissed for the reasons stated in Part I. However, the same prudential arguments also apply to SB 826, and provide additional grounds for dismissal, where the State has a strong interest in addressing known discrimination against qualified women candidates for corporate boards. *See Meland*, 2021 WL 6118651, at \*4-5. Plaintiff's alleged hardships are inadequate to overcome the Secretary's interest in further development of its enforcement position regarding SB 826. Bogart Decl. ¶ 21; *U.S. West Commc'ns*, 193 F.3d at 1118. And, the Secretary's ripeness argument is not foreclosed by the Ninth Circuit's SB 826 decision in *Meland*, 2 F.4th at 848-49. There the court was aware that the Secretary had not adopted regulations or issued fines in connection with SB 826, but it did not address the prudential interests in allowing further development of the record, as the Secretary did not advance such arguments in its briefing. *See Meland v. Padilla*, (Case No. 20-15762) (Ninth Cir.), Answer Br. at 30-33. Here, the Secretary has explained the institutional interests in delaying consideration of Plaintiff's claim--to allow the Secretary to determine whether to regulate (and if she decides to do so, how to do so in compliance with law and the applicable public comment process) after further collection and review of the information required by both statutes, among other factors, and thus, crystalize the issues for review. Cal. Corp. Code §§ 301.3(d) & 301.4(d).

## CONCLUSION

For the foregoing reasons, the Secretary's motion to dismiss Plaintiff's should be granted.

---

[3] These Statements are available through the Secretary of State's Business Search page, https://businesssearch.sos.ca.gov/. Furthermore, Plaintiff's allegations that many companies are non-compliant with SB 826 are also unsupported by publicly available government information. *See* Bogart Decl., Ex. 7.

1    Dated:  February 4, 2022                    Respectfully submitted,

2                                                ROB BONTA
                                                 Attorney General of California
3                                                LAURA FAER
                                                 VILMA PALMA-SOLANA
4                                                Supervising Deputy Attorneys General

5

6                                                /s/ *Lisa Cisneros*
7                                                LISA CISNEROS
                                                 Deputy Attorney General
8                                                *Attorneys for*
                                                 *Office of Secretary of State*
9
     LA2021604822
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Def. Secretary of State's Motion to Dismiss Complaint (2:21-cv-02168)