ANASTASIA P. BODEN, No. 281911
Email: ABoden@pacificlegal.org
DANIEL M. ORTNER, No. 329866
Email: DOrtner@pacificlegal.org
JOSHUA P. THOMPSON, No. 250955
Email: JThompson@pacificlegal.org
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,<br><br>Plaintiff,<br><br>v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,<br><br>Defendant. | No. 2:21-cv-02168-JAM-AC<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## INTRODUCTION

The Equal Protection Clause guarantees that the government will treat individuals equally regardless of their race, sex, or sexual orientation. California's diversity quotas mandate the exact opposite, requiring publicly traded companies headquartered in California to consider these factors in perpetuity. These diversity mandates, which dole out benefits and impose burdens on the basis of race, sex, and sexual orientation, violate the Constitution's guarantee of equality under the law.

Defendant's motion to dismiss largely serves up claims that have already been rejected in previous legal challenges. Indeed, their precise arguments regarding the

inability to bring a facial challenge against AB 979, California's race and sexual orientation quotas, was considered and rejected by this court in the *Alliance for Fair Board Recruitment v. Weber*, No. 2:21-cv-01951-JAM-AC, ECF No. 73, Hearing Transcript at 29:7–11 (E.D. Cal.). And their argument that a challenge is not ripe, including their prudential ripeness argument, was considered and rejected by the Ninth Circuit in *Meland v. Weber,* 2 F.4th 838, 849 (9th Cir. 2021). These rehashed claims are meritless, and Plaintiff's claim must be allowed to proceed. This Court should also not dismiss Plaintiff's challenge to SB 826, California's Woman Quota. Plaintiff has adequately pleaded a facial claim and no binding precedent requires dismissal.

## BACKGROUND

Since 2020, all publicly held corporations headquartered in California have been required to meet a quota of female board members or face fines under SB 826. Complaint ¶¶ 1–12. As of 2022, these companies have also been required to meet an additional quota of "diverse" board members based on race and sexual orientation under AB 979. Complaint ¶¶ 14–17. These diversity quotas apply to all publicly held companies headquartered in California across every industry in perpetuity, regardless of whether there is any specific evidence of discrimination necessitating a government mandated remedy. Complaint ¶ 1.

The Secretary must publish an annual report on the Office's website listing compliance with the diversity quotas. Complaint ¶ 19. Publicly held companies that are headquartered in California must file an annual statement with the Secretary which discloses whether the company complies with the diversity quotas. Complaint ¶ 20. The Secretary is authorized to impose fines of up to $100,000 for a first violation and $300,000 for a second violation of each of the quotas. Complaint ¶ 22.

Plaintiff National Center for Public Policy Research (National Center) is a 501(c)(3) organization that supports free market solutions and opposes corporate and

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

shareholder social activism that detracts from the goal of maximizing shareholder returns. Complaint ¶ 4. National Center believes that shareholders should vote for board members based on their individual talents and capacities and that quotas based on immutable characteristics are offensive and contrary to this goal, as well as to the Constitution. Complaint ¶ 7. National Center owns shares in at least fourteen companies that are subject to California's diversity quotas. Complaint ¶ 5. Some of the companies that it invests in do not have the requisite number of diverse directors on their boards and will be subject to fines unless the shareholders vote according to the challenged quotas. Complaint ¶ 35.

The Center puts forward around 25 shareholder proposals to the SEC a year which are intended to return focus to the company's bottom line rather than political pursuits. Complaint ¶ 6. National Center intends to put forward shareholder proposals which would forbid consideration of characteristics such as race, sex, and sexual orientation in the selection of directors. *Id.* Contrary to these proposals, the diversity quotas impose a state mandated requirement that publicly traded corporations and their shareholders consider race, sex, and sexual orientation in the selection of directors. Complaint ¶ 34.

In order to achieve their goal, the diversity quotas must impact the behavior of shareholders like National Center, who elect the board at annual meetings. Complaint ¶ 24. Some of the impacted companies that National Center invests in, such as Twitter, have adopted a majority voting standard for the election of directors making them particularly responsive to shareholder votes and demands. Complaint ¶ 27. National Center intends to vote on board member nominees at upcoming annual meetings for the companies that it holds shares in, as well as at subsequent meetings. Complaint ¶ 30. Shareholders may also submit names of candidates for election to the board of directors, Complaint ¶ 28, and in the future, National Center plans to put forward candidates who support the Center's vision. Complaint ¶ 30.

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

1

**LEGAL STANDARDS**

To avoid a motion to dismiss, a complaint need only "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This Court must "accept[s] as true all well pleaded facts in the complaint and construe[s] them in the light most favorable to the nonmoving party." *Zadrozny v. Bank of N.Y. Mellon*, 720 F.3d 1163, 1167 (9th Cir. 2013). There is no difference between what must be pleaded to raise an as-applied challenge and a facial challenge, as "the distinction between facial and as-applied challenges . . . goes to the breadth of the remedy employed by the Court, not what must be pleaded in a complaint." *Citizens United v. FEC*, 558 U.S. 310, 331 (2010).

**ARGUMENT**

**I.    Plaintiff's Challenge to AB 979 Should Not be Dismissed**

The Secretary argues that National Center's facial challenge to AB 979 should be dismissed because it may be legal in some applications. This argument is identical to the one already rejected by this Court in the *Alliance* case, and it should be rejected here as well. *Alliance*, Hearing Transcript at 29:7–11 ("Plaintiff, in particular, insisted it has stated a plausible claim that AB 979 on its face authorizes or encourages racial discrimination. And because it encourages such discrimination, it's unconstitutional regardless of whether discrimination is actually required in every instance.").

This is true even if there may be some hypothetical scenarios where a company can end up complying by acting in a non-discriminatory fashion. In *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993), the Supreme Court emphasized that "[w]hen the government erects a barrier that makes it more difficult for members of one group to obtain a benefit than it is for members of another group, a member of the former group seeking to challenge the barrier need not allege that he would have obtained the benefit but for the barrier," and that the

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

relevant injury is "the inability to compete on an equal footing in the bidding process, not the loss of a contract." *Id.* at 657, 666. Similarly, in *Bras v. Cal. Pub. Utilities Comm'n*, 59 F.3d 869, 871–72 (9th Cir. 1995), the Ninth Circuit declared that the key question was "not whether a statute 'requires' the use of such measures, but whether it authorizes or encourages them." *Id.* at 875. The court rejected the argument that the law could not be challenged because it did "not require public utilities to adopt discriminatory programs." *Id.* It was enough that the law "clearly [had] the practical effect of requiring them to do so" or even that it "effectively encourage[d]" them to adopt discriminatory programs. *Id.* And in *Monterey Mechanical,* the court once again reiterated that "[b]eing forced to compete on an unequal basis because of race (or sex) is an injury under the Equal Protection Clause." *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 707 (9th Cir. 1997).

Under *Associated Gen. Contractors, Bras,* and *Monterey Mechanical*, Plaintiff's challenge to AB 979 must be allowed to proceed. Under AB 979, it is "more difficult for members of one group" (white and/or straight and/or cis and/or male board nominees) "to obtain a benefit than it is for members of another group" (so-called "underrepresented" board nominees). *Associated Gen. Contractors*, 508 U.S. at 666. AB 979 mandates that board nominees "compete on an unequal basis" because only applicants of a certain race can satisfy the race quota. *Id.* at 657. The law's "practical effect" is therefore to put an invidious and discriminatory thumb on the scale and to "effectively encourage" race discrimination. *Bras*, 59 F.3d at 875. This pressure to discriminate is felt even if companies ultimately find ways to avoid engaging in discrimination with any particular election or nominee.

Defendant's arguments are defective for the same reasons this Court already discussed in *Alliance*. For instance, Defendant argues that since a company can choose to fill its quota in other ways, AB 979 does not actually compel discrimination based on race. MTD at 4. But as this Court concluded, "it is no defense that AB 979 combines

two distinct groups, racial minorities, and LGBTQ" because "AB 979 encourages race-based discrimination" and that is true "regardless of whether discrimination is actually required in every instance." *Alliance*, Hearing Transcript at 29:12-17.

Under Defendant's theory, a discriminatory law could not be challenged so long as it offered at least one alternative. For instance, a law that stated that the apartments in a particular neighborhood could only be rented by white people or by people who were registered Republicans could not be challenged because some non-white Republican individuals could rent an apartment. But this hypothetical law would still exclude from consideration a large number of potential renters based on their skin color and encourage discrimination on the basis of race. AB 979 operates the same way. A white board member who is not part of the LBGTQ community may not fill a seat mandated by the quota because of that individual's skin color. The fact that AB 979 offers as an alternative discrimination on the basis of sexual orientation cannot lessen AB 979's blatant encouragement of discrimination on the basis of race. And unlike in the *Alliance* case, National Center does challenge AB 979's discrimination based on sexual orientation. Complaint ¶ 40.

Defendant further claims that AB 979 is not unlawful because corporations may add or subtract seats on their board. MTD at 7–8. But this same argument that a quota is benign because spots can be added was rejected by the Supreme Court in *Regents of Univ. of California v. Bakke*. 438 U.S. 265, 289 (1978). Regardless of whether a corporation can simply add more seats, AB 979 tells applicants that "[n]o matter how strong their qualifications . . . including their own potential for contribution to . . . diversity, they are never afforded the chance to compete with applicants from the preferred groups" for *purposes of the reserved seats*. *Id.* at 319. And even if some corporations could develop elaborate mechanisms to avoid discrimination, that does not change the fact that AB 979 "authorizes or encourage[s]" consideration of these factors." *Bras*, 59 F.3d at 875.

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

Defendant "recognizes that the Court has already rejected the Secretary's AB 979 arguments in *Alliance*" and that "those arguments are repeated here to preserve the issue for appeal." MTD at 7. Defendant claims, however, to be offering the "new" argument that since private actors may be *allowed* under certain circumstances to adopt race conscious programs, AB 979 may, in some cases, not require some private employers to go beyond what they are sometimes permitted to do under federal law. This is not really a new argument, just a variation of the same argument that was already rejected in *Alliance*. The Court in *Alliance* considered and rejected Defendant's argument that "there are constitutional applications of AB 979" along with the "various hypotheticals" Defendant put forward in defense of her position. *Alliance*, Hearing Transcript at 28:11-19. Presenting yet another hypothetical does not alter the well-reasoned conclusion.

Moreover, Defendant points to no federal law or regulation authorizing or requiring the use of racial preferences in the selection of board members. Only AB 979 puts a coercive thumb on the scale mandating the consideration of race in perpetuity even if there is *not* "a manifest imbalance." MTD at 9.

Defendant's reliance of an out of circuit case dealing with a completely different constitutional right is unpersuasive. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), involved a Second Amendment challenge to a law which regulated possession of firearms at places of worship. When applied to private property, the law merely vindicated "the equally fundamental right of a private property owner to exercise exclusive dominion and control over its land" and therefore it was "capable of numerous constitutional applications," *Id.* at 1265–66, This is not remotely analogous to AB 979, because there is no constitutional right of corporate boards to discriminate. Even if federal law allows some corporations to discriminate in selecting board members, this does not mean that a *state* can lawfully *require* that all publicly traded companies engage in discrimination. Defendant's "new" argument, therefore, lacks

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

merit, and Plaintiff's facial claim against AB 979 must be allowed to proceed.

## II. Plaintiff's Challenge to SB 826 Should Not be Dismissed

Plaintiff's challenge to SB 826 should also be allowed to proceed because SB 826 discriminates based on sex without any substantial relationship to an important state objective and is defective in significant respects that are apparent on its face. Sex-based remedial measures must be flexible, narrow, and time-limited. *See, e.g., Mallory v. Harkness*, 895 F. Supp. 1556, 1562 (S.D. Fla. 1995); *Mississippi Univ. for Women v. Hogan*, 458 U.S. 718, 729 (1982); *Ensley Branch, N.A.A.C.P. v. Seibels*, 31 F.3d 1548, 1581 (11th Cir. 1994); *Back v. Carter*, 933 F. Supp. 738, 759 (N.D. Ind. 1996). SB 826 is none of those things. SB 826 is a rigid quota that takes a number of seats off the table and reserves them for one sex without exception, barring evaluation of a candidate on a case-by-case basis and lacking opt-out, waiver, or good faith provisions. *City of Richmond v. J.A. Croson Co.*, 488 U.S. 469, 508 (1989) (discussing how these are vital safeguards for ensuring that those benefitted have actually "suffered from the effects of past discrimination" and that innocent parties are not "unnecessarily burdened"); *Coral Const. Co. v. King Cnty.*, 941 F.2d 910, 924 (1991) (same). SB 826 is overbroad in that it applies to all corporate boards throughout the state regardless of industry, size, and location of the corporation. *See Coral Const. Co.*, 941 F.2d at 931 ("Some degree of discrimination must have occurred in a particular field before a gender-specific remedy may be instituted in that field."). And it lasts in perpetuity regardless of how attitudes, treatment, and female representation shifts in the upcoming years. Moreover, because SB 826 explicitly incorporates stereotypes about female behavior (i.e., women have a distinctive leadership style, are risk-averse, law-abiding, and have certain views about corporate responsibility), it impermissibly relies on "overbroad generalizations about the different talents, capacities, or preferences of males and females." *United States v. Virginia*, 518 U.S. 515, 516 (1996). In light of these significant defects, Plaintiff has pleaded a facial challenge.

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

In the *Alliance* case, this Court erred in dismissing the facial challenge against SB 826. And because National Center was not a party to the lawsuits in *Alliance* or *Meland*, it is not barred by res judicata from raising its challenge to SB 826 in this case. *See Taylor v. Sturgell*, 553 U.S. 880, 898 (2008). Plaintiff's challenge to the Woman Quota should be allowed to proceed for precisely the same reasons that its challenge to the race quota should be allowed to proceed. The Woman Quota "effectively encourages" or requires discrimination on the basis of sex in precisely the same way that the race quota encourages or requires discrimination on the basis of race. And Plaintiff has pleaded that there is not the requisite tie to any legitimate goal, including any remedial goal, sufficient to sustain the law. Plaintiff has therefore adequately pleaded a Fourteenth Amendment violation. Whether SB 826 survives intermediate scrutiny is a question for the merits, not a question on a motion to dismiss, where all of Plaintiff's allegations must be taken as true.

Significantly, *Bras*, a key case that this Court relied on in rejecting Defendant's motion to dismiss and ruling that a facial challenge to AB 979 could proceed in *Alliance*, was a case that involved both discrimination on the basis of race *and* discrimination on the basis of sex. *Bras*, 59 F.3d at 874. The Court in *Bras* rejected the argument that the challenge failed because the law did not "contain any race or *gender specific* discriminatory devices." *Id.* (emphasis added). The law was susceptible to an equal protection challenge because it "accords preferential treatment to black- and *female-owned contractors*" and "it disadvantages them in the same fundamental way." *Id.* (emphasis added). *Bras*, therefore, supports allowing Plaintiff's woman quota claims to proceed.

The same is true for *Monterey Mechanical*, where a contractor challenged a law that required it to set goals to subcontract with 15% minority business enterprises and 5% women owned businesses. *Monterey Mech.*, 125 F.3d at 704. The Court found that "[b]eing forced to compete on an unequal basis because of race (or sex) is an injury

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

under the Equal Protection Clause" and that "[a] person required by the government to discriminate by ethnicity *or sex* against others has standing to challenge the validity of the requirement, even though the government does not discriminate against him." *Id.* at 706, 707 (emphasis added). Plaintiff has made the exact same allegation here: SB 826 imposes a sex-based classification that bears no substantial relationship to any important state interest.

The key case that Defendant relies on, *United States v. Salerno*, 481 U.S. 739 (1987)*, makes no sense in the equal protection context. *Salerno* involved a due process challenge to the highly fact specific Bail Reform Act, and so rejecting a facial claim made sense in light of the "extensive safeguards" put in place to guarantee due process. *Id.* at 752. By contrast, SB 826 applies to all publicly traded corporations without consideration of industry, size, and location of the corporation, with no "safeguards."[1] It is inherently ill-tailored and unconstitutional in all applications because it imposes a rigid, arbitrary, and perpetual quota. Plaintiff has therefore adequately alleged that it is unconstitutional in every application.

Finally, dismissal at the motion to dismiss stage is not compelled by the Court's decision to decline to enter *preliminary* relief in *Meland*. A preliminary injunction motion is not an adjudication on the merits and cannot dictate whether Plaintiff has stated a claim in a separate case. Moreover, that decision came upon review and consideration of "thousands of pages of 'extracurricular' documents" including legislative history and expert reports. None of the "extracurricular documents" or "persuasive evidence" is before the Court as part of this motion to dismiss, its

---

[1] The *Salerno* factors are also prudential, and the Supreme Court has sharply pushed back on prudential limits in recent years, emphasizing that "'a federal court's obligation to hear and decide' cases within its jurisdiction 'is virtually unflagging.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014) (citations omitted). This "unflagging" duty should be particularly pronounced when fundamental constitutional rights and principles like equal protection are on the line.

1    allegations must be taken as true, and Plaintiff should be given an opportunity to

2    rebut any evidence that eventually comes before the Court after it is able to conduct

3    discovery and on the merits.

4        **III.   Plaintiff's Claims Are Ripe**

5          Defendant argues that Plaintiff's claims are not ripe because she has not taken

6    steps to enforce the diversity quotas and perhaps never will. This is yet another claim

7    that is past its expiration date. In fact, this identical claim was made by Defendant in

8    the *Meland* case and rejected by the Ninth Circuit. In their answering brief, in that

9    case, Defendant argued that the claim was not ripe "because the alleged harm—that

10   the Secretary of State may decide to levy fines on corporations that do not comply with

11   SB 826—is entirely speculative." *Meland v. Weber,* Case: 20-15762, Dkt. No. 34 at 31

12   (9th Cir.). The Ninth Circuit rejected Defendant's argument. It held "[t]here is no

13   ripeness . . . issue here, because Meland's injury is not 'conjectural or hypothetical.'"

14   *Meland*, 2 F.4th at 849 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)).

15   This was because Meland's injury was "being subjected to a law that requires or

16   encourages him to discriminate based on sex" and that this "injury is ongoing, because

17   OSI's shareholders are responsible for electing directors at each annual meeting, and

18   SB 826 continues to require or encourage them to vote in a discriminatory manner[.]"

19   *Id.* The Ninth Circuit further explained that the claim was ripe even if the Secretary

20   never enforces the Woman Quota because "'it would strain credulity' to hold that a

21   government enactment requiring a regulated entity to change its practices 'does not

22   require action immediately enough to constitute an injury-in-fact,' whether or not a

23   monetary sanction is imposed.*" Meland*, 2 F.4th 838, 846–47 (9th Cir. 2021) (quoting

24   *Texas v. Equal Emp. Opportunity Comm'n*, 933 F.3d 433, 448 (5th Cir. 2019)).

25         The same injury that the Ninth Circuit identified in *Meland* is present here.

26   California's diversity quotas are having their desired effect in coercing shareholders

27   and companies to select directors based on race, sex, and sexual orientation.

28

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

1   Complaint ¶ 29. This is happening whether or not "a monetary sanction is imposed."

2   *Meland*, 2 F.4th at 846–47.

3        Defendant's argument further strains credulity because she has defended the

4   Woman Quota by arguing that a mandate was needed because companies would not

5   comply with a mere recommendation. *See Meland v. Weber*, 2-19-cv-02288, ECF No.

6   32-6 D. Br. Opp. Mtn. PI at 8; *Id.* ECF No. 32-6, Konrad Decl. ¶ 11 ("[T]he failure of

7   the voluntary initiative in California indicates that without a law like SB 826, that

8   discrimination would continue to exist."); *Id.* ECF No. 30 at 38:14-16 ("We have tried

9   to address the problem with -- on a voluntary basis. That hasn't work[ed]"). But now

10  she argues that the Woman Quota is merely a recommendation after all because

11  penalties have not been levied. She cannot have it both ways.

12       Defendant's argument also strains credulity because the Secretary has taken a

13  variety of actions in furtherance of California's diversity quotas. In March 2022, the

14  Secretary published yet another annual report which sets out the names of more than

15  700 "impacted corporations" and lists when the company filed its most recent

16  disclosure statement, the number of total directors, the number of female directors,

17  and the number of underrepresented community member directors. Defendant has

18  vigorously defended and implemented the laws and she should not be able to evade

19  review by claiming that they are merely a suggestion.

20       Finally, National Center also alleges several ongoing injuries that were not

21  alleged in *Meland*. California's diversity quotas interfere with National Center's

22  efforts to enact shareholder proposals that restrict consideration of immutable

23  characteristics. Complaint ¶ 6.[2] Even if the diversity quotas are never enforced, their

24  _____

25  [2] This year National Center put forward a proposal that the companies that it invests

26  in conduct an audit of the company's policies that have an impact "on civil rights and
    non-discrimination in the workplace." *See* Walt Disney Company, Rule 14a-8 No

27  Action Letter (Jan. 19, 2022), https://www.sec.gov/divisions/corpfin/cf-noaction/14a-
    8/2022/ncpprwaltdisney011922-14a8.pdf. This audit can in future years be leveraged

28  *Plaintiff's Opposition to Defendant's Motion to Dismiss*

existence makes it extremely unlikely that any corporation will risk falling out of compliance with California's mandatory diversity quotas by enacting a proposal that opposes consideration of race, sex, or sexual orientation. Complaint ¶ 34. National Center also plans to put forward its own nominees for the board of directors and any non-compliant candidates or candidates who oppose diversity mandates would be at a severe disadvantage in light of California's diversity quotas. Complaint ¶ 30.

Defendant also claims that the Ninth Circuit did not consider "prudential ripeness" in making its decision. MTD at 15. This is simply wrong. Defendant did raise prudential mootness in *Meland by* arguing that the court should "evaluate prudential considerations for determining ripeness," *Meland v. Weber,* No. 20-15762, Dkt. 34 at 31 (9th Cir.), and asserting that "Meland's claims do not satisfy either the constitutional or prudential requirements of a ripeness claim." *Id.* at 33. The *Meland* decision conclusively rejected all of Defendant's arguments regarding ripeness.

Defendant's prudential ripeness arguments are also meritless.[3] The Ninth Circuit has pointed to "two overarching considerations" regarding prudential ripeness, "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000). Both considerations favor hearing this case now.

First, the issues in this case are "purely legal, will not be clarified by further factual development," *Susan B. Anthony List*, 573 U.S. at 167, and do not depend on the circumstances of enforcement as the diversity quotas squarely "delineate the boundaries of what conduct the government may or may not regulate." *Alaska Right*

---

by National Center to put forward proposals advocating against taking race, sex, or sexual orientation into account.

[3] Such prudential jurisdictional barriers have fallen sharply out of favor in light of the Supreme Court's declaration that courts have a "virtually unflagging" duty "to hear and decide cases within its jurisdiction." *Lexmark Int'l, Inc.*, 134 S. Ct. at 1386; *see Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014) (recognizing that the doctrine of prudential ripeness "is in some tension" with the courts' obligation to hear cases within their jurisdiction).

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

*to Life Pol. Action Comm. v. Feldman*, 504 F.3d 840, 849 (9th Cir. 2007). Defendant raises the farfetched scenario of implementing regulations that may supposedly bring the diversity quotas in line with federal law. MTD at 10. But the diversity quotas unquestionably pressure or encourage discrimination, meaning nothing is needed to ripen this dispute. The government cannot evade constitutional challenge by asserting that it may, at some point in the future, issue regulations that would wholly change the law's requirements. And because the diversity quotas pressure or encourage discrimination at each and every election, it matters not whether any particular company that National Center invests in is currently in or out of compliance with the quotas. *See Meland*, 2 F.4th at 849 (finding that the case was still ripe and not moot even if a particular company was "currently in compliance with SB 826"). What matters is the quotas impose a continuing obligation to discriminate.

Second, "denying prompt judicial review would impose a substantial hardship on petitioners." *Susan B. Anthony List*, 573 U.S. at 167–68. California's diversity quotas are already having a coercive and discriminatory impact whether or not the Secretary ever brings an enforcement action.[4] National Center and other shareholders are forced to either engage in race, sex, and sexual orientation discrimination or risk subjecting their companies to public shaming and a fine. The law also erects significant barriers to Plaintiff's advocacy for equality under the law. On the other hand, judicial review will not cause hardship to the Secretary. To the contrary, timely review will prevent the Secretary from further expending taxpayer dollars to enforce facially unconstitutional laws. There is no cause for delay.

---

[4] A superior court in California recently granted summary judgment in favor of a plaintiff challenging the legality of AB 979. *Crest v. Padilla*, No. 20ST-CV-37513 (Supp. Ct. Cal. 2022). But it is likely that this decision will be appealed and it has no bearing on whether Plaintiff's claims should be dismissed.

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

DATED: April 5, 2022.

Respectfully submitted,

By: /s Anastasia P. Boden

ANASTASIA P. BODEN
DANIEL M. ORTNER
JOSHUA P. THOMPSON
Pacific Legal Foundation
555 Capitol Mall, Suite 1290
Sacramento, California 95814
Telephone: (916) 419-7111
Facsimile: (916) 419-7747
ABoden@pacificlegal.org
DOrtner@pacificlegal.org
JThompson@pacificlegal.org

*Attorneys for Plaintiff National Center for Public Policy Research*

*Plaintiff's Opposition to Defendant's Motion to Dismiss*

15

1

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2022, I electronically filed the foregoing document with the Clerk of the Court via CM/ECF system, which will cause a copy to be served upon counsel of record.

/s/ Anastasia P. Boden
ANASTASIA P. BODEN

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Plaintiff's Opposition to Defendant's Motion to Dismiss*