1   ROB BONTA, State Bar No. 202668
    Attorney General of California
2   MICHAEL L. NEWMAN, State Bar No. 222993
    Senior Assistant Attorney General
3   LAURA L. FAER, State Bar No. 233846
    VILMA PALMA-SOLANA, State Bar No. 267992
4   Supervising Deputy Attorneys General
    LISA CISNEROS, State Bar No. 251473
5   DELBERT TRAN, State Bar No. 323993
    SOPHIA CARRILLO, State Bar No. 326428
6   Deputy Attorneys General
     455 Golden Gate Ave., Suite 11000
7    San Francisco, CA 94102-7004
     Telephone:  (415) 510-3438
8    E-mail:  Lisa.Cisneros@doj.ca.gov
    *Attorneys for Defendant California Secretary of*
9   *State Shirley N. Weber*

10                  IN THE UNITED STATES DISTRICT COURT

11                 FOR THE EASTERN DISTRICT OF CALIFORNIA

12                          SACRAMENTO DIVISION

13

14  | | |
    |---|---|
    | **NATIONAL CENTER FOR PUBLIC POLICY RESEARCH,** | 2:21-CV-02168 JAM-AC |
    | Plaintiff, | **DEFENDANT SECRETARY OF STATE SHIRLEY N. WEBER'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S COMPLAINT** |
    | v. | Date:  April 19, 2022<br>Time: 1:30 p.m.<br>Dept: 6 |
    | **SHIRLEY N. WEBER, in her official capacity as Secretary of State of the State of California,** | Judge:     The Honorable John A. Mendez<br>Trial Date:    TBD |
    | Defendant. | Action Filed:  November 22, 2021 |

**INTRODUCTION**

The California Legislature determined that SB 826 and AB 979 were necessary to remedy longstanding discrimination in the selection of directors for California publicly held corporations. Plaintiff National Center for Public Policy Research's (NCPPR) complaint fails to allege a plausible facial claim against either provision, is prudentially unripe, and should be dismissed.

**ARGUMENT**

**I.    NCPPR'S FACIAL CLAIM AGAINST SB 826 MUST BE DISMISSED.**

Contrary to NCPPR's contentions, this Court properly dismissed the SB 826 facial claim in *Alliance v. Weber*, Case No. 2:21-cv-01951, based on *United States v. Salerno*, 481 U.S. 739 (1987), and the Ninth Circuit precedents that it relied upon in denying a preliminary injunction in *Meland v. Weber*, Case No. 2:19-cv-02288. *See Alliance* Mot. to Dismiss Hr'g Tr. 15:12-19, 27:4-24; *Meland* Order Denying Mot. for Prelim. Inj. at 9-12, ECF No. 67 (*Meland* PI Order) (citing *Coral Constr. Co. v. King Cnty.*, 941 F.2d 910, 931 (9th Cir. 1991); *Associated Gen. Contractors of Cal., Inc. v. City and Cnty. of San Francisco*, 813 F.2d 922, 940 (9th Cir. 1987).

NCPPR's citations do not justify a different ruling. Plaintiff briefly cites *Citizens United v. FEC*, 558 U.S. 310, 331 (2010), but this Court already rejected this argument in *Alliance*. *Alliance* Tr. 27:5-7 ("*Citizens* . . . is readily distinguishable."); *see also Alliance* Reply Br. at 1-2, ECF No. 44. As in *Alliance*, none of NCPPR's equal protection cases excuse it from *Salerno*'s requirement that a facial claim demonstrate that all applications of the challenged statute violate the Equal Protection Clause.[1] The Secretary already demonstrated that SB 826 was enacted to remedy sex-discrimination in corporate director selections, and abundant evidence supported the Legislature's determination that discrimination existed. *Meland* PI Order at 11-12.

NCPPR's Ninth Circuit and other cases are also unpersuasive. *Bras v. Cal. Pub. Utils. Comm'n*, 59 F.3d 869 (9th Cir. 1995) held only that the plaintiff had standing to raise his as-applied equal protection claims, and "express[ed] no opinion" as to whether the code or order at

---

[1] NCPPR argues based on *Lexmark Int'l, Inc. v. Statis Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014), that *Salerno* should not apply here, but that case does not refer to *Salerno* at all. Moreover, after *Lexmark* was decided, the Ninth Circuit stated that it continues to apply *Salerno*. *Puente Ariz. v. Arpaio*, 821 F.3d 1098, 1104 (9th Cir. 2016); Mot at 7.

issue in that case "discriminates . . . on the basis of race or gender." *Id.* at 875. Whether Plaintiff has standing has no bearing on the fact that his claim should be dismissed *on the merits* under *Salerno*. Mot. at 6-7. *Monterey Mechanical Co. v. Wilson* is similarly unavailing. 125 F.3d 702 (9th Cir. 1997). There, "the University offered no evidence whatsoever to justify" the remedial programs, and because it "offered no evidence or argument justifying discrimination," the Court did "not reach the question" of whether the sex-based remedy "violates . . . equal protection[.]" *Id.* at 713-14. *Monterey Mechanical* does not give NCPPR a viable facial claim. NCPPR also cites out-of-circuit cases to support its facial claim against SB 826, but this Court already rejected these cases. Opp. at 8; *Meland* PI Order at 20-21. The SB 826 facial claim should be dismissed.

## II.   PLAINTIFF'S FACIAL CLAIM AGAINST AB 979 MUST BE DISMISSED.

NCPPR's facial claim against AB 979 should be dismissed based on *Salerno* and *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261, 1266 (11th Cir. 2012). *GeorgiaCarry* recognizes that a facial constitutional claim may not lie when the challenged statute requires what private parties may already do—providing constitutional application(s) of the statute. Mot. at 9-10. NCPPR does not dispute that private corporations are authorized by federal law to remedy discrimination by taking specific actions to address harm to previously-discriminated against groups in selection for a particular position. Mot. at 8-9. Like the statute in *GeorgiaCarry*, AB 979 does not infringe, in all of its applications, on any individual's constitutional rights because private corporations may adopt race conscious programs when past discrimination has been identified. Mot. at 8-9; *see, e.g.*, *United Steelworkers of Am. AFL-CIO v. Weber*, 442 U.S. 193, 209 (1979) (Title VII allows private entities to employ race-based remedial plans).

Nor does AB 979 establish a rigid quota that is unconstitutional in all applications. Rather, it enhances competition where little to none existed previously, thereby equalizing the playing field for those previously disadvantaged. And unlike the program in *Bakke*, AB 979 provides that a corporation may increase the size of its board to accommodate all candidates of every race and background in order to achieve compliance. Cal. Corp. Code § 301.4(a). *Bakke* is distinguishable, as it did not address an admissions system in which there was flexibility in the number of seats available to medical school applicants. *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 272

2

(1978). Faculty voted to set-aside a defined number of seats in a fixed class size each year. *Id.* at 275. Corporate boards are also distinct because they are deliberative, decision-making bodies, not a fixed resource to be allocated among a defined pool of applicants. James D. Cox & Thomas Lee Hazen, 2 *Treatise on the Law of Corporations* § 9:5 (3d ed. 2010). Therefore, adding opportunities for women and underrepresented groups does not automatically exclude others. Under AB 979, all candidates that the corporation wants to select can be included. Because Plaintiff cannot plausibly allege that AB 979 is unconstitutional in "all of [it] applications," its facial equal protection challenge must be dismissed. *See Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 (2008) (*citing Salerno*, 481 U.S. at 745).

## III.   PLAINTIFF'S CLAIM IS NOT PRUDENTIALLY RIPE.

Plaintiff's claims are not ripe because the Secretary has not yet promulgated regulations implementing AB 979 and SB 826.[2] Plaintiff cites *Meland v. Weber*, 2 F.4th 838, 848 (9th Cir. 2021), but the Ninth Circuit addressed a different ripeness question. There, the Secretary argued that Meland's claim was "unripe and moot when the corporation is in compliance with the law." Ans. Br. at 3, *Meland I*, No. 20-15762. The Ninth Circuit disagreed, explaining that even if the corporation currently complied with SB 826, the corporation's shareholders would continue to vote for directors at each annual meeting, where the shareholder would allegedly feel continued coercion due to the ongoing possibility of noncompliance and threatened fines. *Meland*, 2 F. 4th at 849. In short, the Ninth Circuit addressed ripeness based on what a corporation and its shareholders will do. But the ripeness problem raised here relates to what the *Secretary* will do. The Secretary must first promulgate regulations to implement the statute, including regulations that would create a mechanism for imposing penalties. *See* Cal. Corp. § 301.3(e)(1). Without the threat of penalties, NCPPR has no basis for claiming coercion. *Cf. Meland*, 2 F. 4th at 847 ("Meland is subject to the coercive effect of SB 826" due to "potential . . . sanctions").

NCPPR also cites *Meland* to state that it is injured even if a monetary sanction is not

---

[2] Though NCPPR suggests that the Supreme Court has cast doubt on the prudential component of ripeness, Opp'n at 13 n.3, the Ninth Circuit "appl[ies] it . . . regardless" because the Supreme Court has not yet resolved its view on the doctrine. *Skyline Wesleyan Church v. California Dep't of Managed Health Care*, 968 F.3d 738, 751 n.9 (9th Cir. 2020).

3

imposed. Opp'n at 11-12. But there, *Meland* held that a law could create Article III injury for a shareholder even if it "does not impose monetary sanctions *directly* on shareholders" if "such sanctions affect a shareholder's ownership interest in the corporation." *Id.*, 2 F. 4th at 847 (emphasis added). Thus, *Meland* reaffirms why this case is unripe: the Ninth Circuit held that a plaintiff could be "encourage[d]" where the law threatens the risk of *sanctions*, *id.* at 846 (using "encourage" and "coerce" interchangeably)—here, absent regulations, the Secretary lacks the mechanism to impose sanctions, Bogart Decl. ¶ 18, making the risk null and this suit premature.

NCPPR next claims that the Secretary's ripeness argument is inconsistent with her arguments that diversity mandates are necessary because voluntary efforts have failed. But NCPPR misstates the Secretary's position; the Secretary has never suggested that AB 979 and SB 826 are "merely . . . recommendation[s]" or that she may "never enforce" them. Opp'n at 11-12. Rather, it is that she has *not yet* promulgated regulations implementing them. The Secretary maintains that these mandates are necessary to redress discrimination. But the question of whether the laws are necessary poses a different question from whether this suit is premature. Ripeness is a question of timing—and the doctrine prevents premature suits that interfere with agencies' ability to formulate interpretations and implementations of policy. *See Ass'n of Am. Med. Colleges v. United States*, 217 F.3d 770, 779–82 (9th Cir. 2000). This is precisely what has happened here: NCPPR sued prior to implementation, interfering with the Secretary's ability to formulate regulations and receive public comment to determine how best to implement the law.

Indeed, NCPPR's premature suit illustrates the two concerns motivating prudential ripeness and why they favor dismissal. First, the suit is not fit for judicial resolution. *See Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1141 (9th Cir. 2000). By bringing suit now, prior to promulgation of implementing regulations, NCPPR challenges the diversity statutes when it is unclear precisely how the Secretary will implement their requirements, how or if that manner of implementation will affect NCPPR's various interests (including shareholder proposals), and how that implementation will comport with equal protection principles. *Cf. W. States Paving Co. v. Washington State Dep't of Transp.*, 407 F.3d 983, 996–97 (9th Cir. 2005) (to the extent the "government delegates this tailoring function, a State's implementation becomes critically

4

1   relevant to a reviewing court's strict scrutiny").

2       Second, denying "prompt judicial review" would not impose "substantial hardship" on

3   NCPPR, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 167 (2014), whereas premature

4   adjudication interferes with the Secretary's ability to formulate her policies remedying

5   discrimination. NCPPR fails to contest the Secretary's arguments explaining why NCPPR's

6   theories of injury do not establish adequate claims of injury or hardship. *See* Mot. at 13-15. "[N]o

7   irremediable adverse consequences flow from requiring a later challenge" when the Secretary has

8   promulgated regulations implementing the statutes. *Ass'n of Am. Med. Colleges*, 217 F.3d at 784

9   (citation omitted). NCPPR asserts that it experiences coercion now, but NCPPR's only

10   explanation is a footnote citing the state case involving *taxpayer plaintiffs* given the ability to sue

11   under a state statute, Opp'n at 14 n.4 (citing *Crest v. Padilla*, No. 20ST-CV-37513 (Cal. Super.

12   Ct.) (*Crest II*).[3] NCPPR does not explain how it can be coerced or encouraged when the Secretary

13   has yet to promulgate regulations creating a mechanism for imposing penalties, and thus has not

14   established substantial hardship required to overcome the Secretary's ripeness argument.

15       Finally, NCPPR claims that the Secretary has already taken enforcement action through the

16   annual reports she published. Opp'n at 12. But as the Secretary explained—and which NCPPR

17   did not contest—these reports merely collect board diversity data at single points in time and are

18   insufficient by themselves to determine violations of AB 979's diversity requirements. Mot. at 11.

19   Such informational publications do not count as enforcement for purposes of ripeness. *See*

20   *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1125 (9th Cir. 2009) (holding challenge unripe; agency

21   warning letter written before final agency rules did not constitute enforcement as it "was not a

22   specific warning to Appellees" and "binds no one"). NCPPR has merely identified that the

23   Secretary is still collecting data and considering how she will implement the law. Prior to

24   implementation, this case is premature and should be dismissed.

25                        **CONCLUSION**

26       For the foregoing reasons, the Secretary's motion to dismiss should be granted.

27        [3] Additionally, plaintiffs in *Crest II* prevailed on summary judgment and have proposed a
judgment permanently enjoining enforcement of AB 979. This raises potential mootness as to the

28   AB 979 claim. *Enrico's, Inc. v. Rice*, 730 F.2d 1250, 1254 (9th Cir. 1984).

Dated:  April 12, 2022

Respectfully submitted,

ROB BONTA
Attorney General of California
MICHAEL L. NEWMAN
Senior Assistant Attorney General
LAURA L. FAER
VILMA PALMA-SOLANA
Supervising Deputy Attorneys General
DELBERT TRAN
SOPHIA CARRILLO
Deputy Attorneys General


 */s/ Lisa Cisneros*

LISA CISNEROS
Deputy Attorney General
*Attorneys for Defendant California*
*Secretary of State*

6